IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

LEDO PIZZA SYSTEM, INC., et al. :
:
:
v. : Civil Action No. DKC 06-3177
:
LEDO RESTAURANT, INC., et al. :
:

**MEMORANDUM OPINION**

This action involving claims of breach of contract, trademark infringement, and unfair competition came on for a bench trial in December 2008. Thereafter, the court issued a memorandum opinion and order finding two minor breaches of contract and awarded Plaintiffs nominal damages of one dollar for each.[1] Plaintiffs appealed to the United States Court of Appeals for the Fourth Circuit, which affirmed in part, vacated in part, and remanded for an assessment of damages with respect to an additional breach. *See Ledo Pizza System, Inc. v. Ledo Restaurant, Inc.*, 407 Fed.Appx. 729 (4th Cir. 2011).

Pending before the court is the issue on remand from the Fourth Circuit, as well as Plaintiffs' motion for attorneys' fees (ECF Nos. 133 and 143). The relevant issues have been briefed and the court now rules pursuant to Local Rule 105.6, no

---

[1] Plaintiffs are Ledo Pizza System, Inc., Ledo Pizza Carryouts, Ltd., Robert M. Beall, Margaret K. Beall, Robert G. Beall, Troy L. Beall, James B. Beall, Garth E. Beall, Robert W. Beall, Thelma W. Beall, Mildred Beall, and Thelma B. Beall.

hearing being deemed necessary. For the reasons that follow, Plaintiffs will be awarded an additional five dollars in nominal damages and attorneys' fees in the amount of twenty-five thousand dollars.

**I.   Background**

The factual background of this case has been set forth in detail in two prior opinions (ECF Nos. 94, 129) and will be repeated here only insofar as necessary to frame the relevant issues.

In brief, Robert L. Beall and Thomas E. Marcos, Sr., established the Ledo Restaurant (*i.e.*, Defendant Ledo Restaurant, Inc.), located in Adelphi, Maryland, in or around 1955.[2] The founders' sons – including Plaintiffs Robert M. Beall and James B. Beall and Defendants Thomas E. ("Tommy") Marcos, Jr., and James L. ("Jimmy") Marcos (together, "the Marcos brothers") – became increasingly involved in the business over the years. Eventually, they began licensing, through Plaintiff Ledo Carryouts, Ltd. ("Carryouts"), and franchising, through Plaintiff Ledo System, Inc. ("System").

At some point, the two families became involved in a dispute over the businesses and a law suit was filed. That suit

---

[2] Mr. Marcos, Sr., was also named as a defendant in this suit, but summary judgment was granted in his favor. (ECF Nos. 94, 95). That ruling was upheld on appeal. *See Ledo Pizza System, Inc.*, 407 Fed.Appx. at 731.

2


was resolved, in 1994, by settlement and license agreements signed, *inter alia*, by the Marcos brothers. Under the agreements, the Marcoses sold their interest in Carryouts and System to the Bealls, who obtained sole ownership of the Ledo mark. In return, the Bealls sold their interest in the Ledo Restaurant to the Marcoses. The Marcoses also reserved the right to establish future restaurants or carryouts in Bowie, Maryland, and to "use the names 'Ledo Restaurant,' 'Original Ledo Restaurant' or any other derivative name thereof except 'Original Ledo Pizza,' . . . in connection with the operation [of those establishments]." (ECF No. 129, at 2).

Soon thereafter, the Marcos brothers established Defendant Huntington City Restaurant, Inc., and, through it, opened a restaurant in Bowie called T.J. Elliott's. Jimmy Marcos began running the day-to-day operations at T.J. Elliott's, while Tommy Marcos continued to oversee operations at the Ledo Restaurant in Adelphi. In 2003, along with an associate named Deborah Hamann, the Marcos brothers formed Defendant Huntington City Enterprises, LLC, through which they established a catering business known as Expressions Catering ("Expressions").[3] The Marcos brothers each held a thirty percent interest in

---

[3] For ease of exposition, "T.J. Elliott's" refers to both Defendant Huntington City Restaurant, Inc., and the restaurant it owned and operated. Similarly, "Expressions" refers to both the catering business and the limited liability company that owns it.

3

Expressions, but had little other involvement in the business. Rather, Ms. Hamann ran its daily operations and was generally responsible for all advertising and promotional activities. When Expressions was formed, the Marcos brothers spoke to Ms. Hamann about limitations on the use of the Ledo mark and the sale of Ledo pizza, but there were no other discussions on the subject until after the instant suit was filed.

In 2006, an episode of the Oprah Winfrey Show named Ledo pizza as being among the best in the United States. Unfortunately, the parties did not see eye-to-eye on the import of this segment and each came to believe that the other was unfairly trying to capitalize on the publicity.  In early November 2006, counsel for the Bealls received a letter from the Marcoses' attorney, opining that the show was intended to honor the pizza served at the Ledo Restaurant, not the pizza offered through the franchises.  From the Bealls' perspective, this letter evidenced a fundamental misunderstanding of the prior settlement and license agreements, prompting an investigation of possible violations.  Upon finding what they believed to be unauthorized uses of the Ledo mark – primarily on websites associated with the Ledo Restaurant, T.J. Elliott's, and Expressions – the Bealls commenced this action.

In their second amended complaint, Plaintiffs asserted claims for (1) breach of contract (against the Ledo Restaurant,

4

T.J. Elliott's, and the Marcoses); (2) declaratory relief (against the same defendants); (3) trademark infringement (against Expressions); (4) trademark infringement (against the Ledo Restaurant, T.J. Elliott's, and the Marcoses); (5) unfair competition, false designation of origin (against all defendants); (6) trademark dilution (against all defendants); and (7) common law unfair competition and infringement (against all defendants). (ECF No. 46). In count one, under the general term "breach of contract," Plaintiffs alleged numerous breaches, including, as relevant here, "the advertising and sale of 'Ledo Pizza' and other products under the Ledo name through Expressions Catering in Calvert County, Maryland[.]" (ECF No. 46 ¶ 23(a)).

Some of Plaintiffs' claims were addressed through the parties' cross-motions for summary judgment. (ECF Nos. 94, 95). The remainder proceeded to trial.

**II. Damages Associated with Expressions' Use of the Ledo Mark**

The evidence adduced at trial established that, following a wedding reception for which eight Ledo pizzas were ordered from Tommy Marcos at the Ledo Restaurant and delivered by Ms. Hamann for Expressions, Ms. Hamann listed "Ledo Pizza" on some of Expressions' menus. Those menus were posted on Expressions' website and Expressions later handled two events at which Ledo pizza was served. For one of those events, a bar mitzvah, an

invoice was introduced into evidence indicating that assorted "Ledo" pizzas were served. At another event catered by Expressions, for a church in Bowie, Jimmy Marcos prepared what was described as "Ledo" lasagna and tiramisu. There was no evidence that the Ledo mark was used in association with the lasagna and tiramisu at the church event, but Ms. Hamann subsequently included "Ledo Lasagna" and "Ledo Tiramisu" on an Expressions' menu. This menu was posted on the Expressions website, as was a press release associating the catering business with the Ledo Restaurant. It was uncontroverted that the Marcos brothers had no knowledge of Expressions' use of the Ledo mark and that they did not expressly authorize such use.

Based on this evidence, the court found that Plaintiffs had "established a breach for the use of Ledo marks and sale of Ledo products by Expressions Catering":

> While [the wedding event] technically was a breach of the Settlement Agreement, it was totally inadvertent. The customer initiated the transaction and Tommy Marcos unwittingly adopted the mechanism, through Expressions, to provide the customer what she wanted. Unfortunately, this event prompted Ms. Hamann to compound the problem by adding "Ledo Pizza" to some of Expressions' sample menus. This resulted in one further sale of Ledo pizza by Expressions, at the bar mitzvah, although these pizzas were not purchased from the Ledo Restaurant, but from one of Plaintiffs' franchisees or licensees.
>
> The [wedding] incident, in which eight pizzas were provided by Expressions Catering

6

> to the ultimate customer, was a breach of contract by Tommy Marcos and the Ledo Restaurant. Plaintiffs contend that the Marcos brothers are also responsible for the other sales of Ledo pizzas by Expressions Catering under a principal/agent theory, but this argument is unpersuasive. While the Marcos brothers together own a majority of Expressions Catering, they are not and never have been involved in the day-to-day operations of that business. Tommy Marcos made Expressions his agent only for the wedding event and not generally. The later actions of Ms. Hamann in serving Ledo pizza was not a breach of contract by the Marcos brothers or Ledo Restaurant, Inc. The inclusion of "Ledo Pizza" and "Ledo" tiramisu and lasagna on the Expressions Catering website involves a slightly different analysis, but ultimately reaches the same result insofar as Plaintiffs' agency argument is concerned.

(ECF No. 129, at 11-12 (internal footnote omitted)).

On appeal, the Fourth Circuit disagreed with this court's finding that the Marcos brothers were not liable for Expressions' use of the mark:

> Article 5.2 of the settlement agreement outlines the restrictions applicable to the Marcoses' business activities. Section (b) provides that
>
>> none of the Marcoses, Ledo Restaurant nor any of their successors or assigns shall open or participate directly or indirectly in any carryout or restaurant facility at any location whatsoever utilizing in any was the name "Ledo" or any derivative or expansion thereof or the Ledo Pizza recipe. . . .

7

> There is no dispute that Expressions was not permitted to use Ledo intellectual property. Together, the Marcoses own sixty percent of Expressions and, with this ownership interest, they have, at least indirectly, participated in a business using the Ledo mark without authorization. . . . Accordingly, we find that Expressions' use of the Ledo mark constituted a violation of the agreements by the Marcoses. Therefore, we vacate this portion of the district court's decision and remand it to allow the district court to consider damages on this claim.

*Ledo Pizza System, Inc.*, 407 Fed.Appx. at 731-32.

Following issuance of the appellate mandate, the parties filed a joint submission setting forth their respective positions as to how to proceed on remand. They agreed that no further hearing or briefing was necessary, but presented competing views as to the scope of the remand. According to Plaintiffs,

> the Court should enter additional judgments against Tommy Marcos, Jr., [Jimmy] Marcos and Ledo Restaurant for breach of contract for each occasion when Expressions Catering used any of the Ledo Intellectual Property in any manner, including advertising, sales, promotion, listings on the website, and listings on the menu. . . . [T]he judgment should be in the amount to be determined by the Court based upon the evidence submitted at trial, particularly Plaintiff's Exhibits 5 and 6 [*i.e.*, the wedding and bar mitzvah invoices] and the testimony of Deborah Hamann. Alternatively, a nominal damages award must be made for each of these breaches.

(ECF No. 148, at 1). Defendants argued, on the other hand:

8

> [T]his Honorable Court has already determined the *maximum* damages (nominal damages of $1) and all that remains in order to comply with the direction of the Court of Appeals is to enter that judgment against certain other parties if this Court believes that any non-zero award is appropriate. Of course, the defendants maintain that the appropriate damages award is zero.

(*Id.* at 2 (emphasis in original)).

The court reads the Fourth Circuit's opinion as requiring an assessment of damages for breach of the settlement agreement by the Marcos brothers for each use by Expressions Catering of the Ledo mark. The evidence adduced at trial established that such breaches occurred when Expressions used the mark: (1) on the wedding invoice, (2) on the bar mitzvah invoice, (3) by offering "Ledo" pizza on a menu posted to its website, (4) by later offering "Ledo" lasagna and tiramisu on a menu posted to its website, and (5) on the press release posted to its website. As to the assessment of damages, the court adopts and incorporates its analysis from the prior memorandum:

> While a party may bring an action for damages, it still must prove them with sufficient specificity. If it does not, it is entitled only to nominal damages. "[W]hile other jurisdictions require proof of actual damages to sustain a breach of contract action, Maryland courts have held that '[i]t is well settled that every injury to the rights of another imports damage, and if no other damages is established, the party injured is at least entitled to a verdict for nominal damages.'" *PFB, LLC v. Trabich*, 304 Fed.Appx. 227, 228 (4th Cir.

> 2008) (unpublished) (quoting *Cottman v. Maryland, Dep't of Natural Res.*, 51 Md.App. 380, 443 A.2d 638, 640 (1982)). Thus, even where a party fails to provide evidence sufficient to support a damages claim, "its cause of action for breach of contract cannot fail as a matter of law because [it] is entitled to, at the very least, nominal damages, if the fact-finder determines there was a breach." *PFB, LLC*, 304 Fed.Appx. at 228 (citing *Planmatics, Inc. v. Showers*, 137 F.Supp.2d 616, 624 (D.Md. 2001)).

(ECF No. 129, at 13-14).

As was the case with the two breaches the court originally found – *i.e.*, the posting of a disparaging article to the Ledo Restaurant and T.J. Elliott's websites and the service by Expressions of Ledo pizza at the wedding – Plaintiffs have not shown that the five breaches associated with Expressions' use of their mark have resulted in measurable damages. Accordingly, an award of nominal damages is appropriate and judgment will be entered in Plaintiffs' favor, and against Defendants Tommy and Jimmy Marcos, for one dollar as to each of these five breaches.

### III. Plaintiffs' Motion for Attorneys' Fees

The court exercised supplemental jurisdiction over the breach of contract claims upon which Plaintiffs were awarded nominal damages, and their right to recover attorneys' fees originates from the underlying license agreement.[4] Thus, "absent

---

[4] The indemnification provision in the license agreement reads as follows:

10

a conflicting applicable federal rule of procedure, state law governs not only the actual award of attorneys' fees but also the method of determining those fees." *Rohn Prods. Int'l, LC v. Sofitel Capital Corp. USA, Inc.*, Civ. No. WDQ-06-504, 2010 WL 3943747, at *4 n. 13 (D.Md. Oct. 7, 2010); *see also McAdam v. Dean Witter Reynolds, Inc.*, 896 F.2d 750, 775 n. 47 (3rd Cir. 1990) ("State rules concerning the award or denial of attorneys' fees are to be applied in cases where federal jurisdiction is based on diversity or if the court is exercising [supplemental] jurisdiction").

---

> Ledo Restaurant and the Marcoses . . . hereby assume liability for the payment of all liabilities, obligations, losses, damages, lost profits, penalties, claims, actions, suits, judgments, settlements, out-of-pocket costs, expenses and disbursements (including reasonable costs of investigation, and reasonable attorney's and accountant's fees) of whatever kind and nature arising in any manner or under any circumstances that may be imposed on, incurred by or asserted against either Carryouts or System as a consequence of or in connection with (a) any breach by Ledo Restaurant or the Marcoses of any representation or warranty contained in this Trademark Agreement, . . . or (b) any failure by Ledo Restaurant or the Marcoses to perform any covenant or agreement contained in this Trademark Agreement or in any other agreements or instruments provided for herein.

(ECF No. 46-3 ¶ 6(a)).

As Judge Hollander recently explained,

> [T]he Maryland Court of Appeals has held that the lodestar approach is "an inappropriate mechanism for calculating fee awards" under contractual fee-shifting provisions in "disputes between private parties over breaches of contract." *Monmouth Meadows* [*Homeowners Ass'n, Inc. v. Hamilton*, 416 Md. 325, 336 (2010)]. This is because a "contractual fee-shifting provision is designed by the parties, not by the legislature. . . . Thus, it usually serves no larger public purpose than the interests of the parties." *Congressional Hotel Corp. v. Mervis Diamond Corp.*, 200 Md.App. 489, 505, 28 A.3d 75, 84 (2011). Rather than using the lodestar approach, a court "should use the factors set forth in Rule 1.5 [of the Maryland Rules of Professional Conduct ("MRPC")] as the foundation for analysis of what constitutes a reasonable fee when the court awards fees based on a contract entered by the parties authorizing an award of fees." *Monmouth Meadows*, 416 Md. at 336-37, 7 A.3d at 8.

*Roger E. Herst Revocable Trust v. Blinds to Go (U.S.) Inc.*, Civil Action No. ELH-10-3226, 2011 WL 6444980, at *2 (D.Md. Dec. 20, 2011) (internal footnotes omitted).

Under Maryland Rule of Professional Conduct 1.5(a), the court looks to eight factors:

> (1) the time and labor required, the novelty and difficulty of the questions involved, and the skill requisite to perform the legal service properly;
>
> (2) the likelihood, if apparent to the client, that the acceptance of the particular employment will preclude other employment of the lawyer;

> (3) the fee customarily charged in the locality for similar legal services;
>
> (4) the amount involved and the results obtained;
>
> (5) the time limitations imposed by the client or by the circumstances;
>
> (6) the nature and length of the professional relationship with the client;
>
> (7) the experience, reputation, and ability of the lawyer or lawyers performing the services; and
>
> (8) whether the fee is fixed or contingent.

MRPC 1.5(a).[5] The court "need not evaluate each factor separately, and need not 'make explicit findings with respect to Rule 1.5 at all, or even mention Rule 1.5 as long as it utilizes the rule as its guiding principle in determining reasonableness.'" *Pennington Partners, LLC v. J-Way Leasing, LLC*, Civil Action No. RDB-11-0972, 2012 WL 527661, at *2 (D.Md. Feb. 17, 2012) (quoting *Nautical Girl LLC v. Polaris Investments Ltd.*, No. ELH-10-3564, 2011 WL 6411082, at *1 (D.Md. Dec. 19, 2011)). It should, however, "consider the amount of the fee award in relation to the principal amount in litigation, and this may result in a downward adjustment." *Monmouth Meadows*,

---

[5] "Cases decided under the lodestar approach can 'provide helpful guidance' in contractual fee-shifting cases, *Congressional Hotel*, 200 Md.App. at 505, 28 A.3d at 85, because 'there is likely to be some overlap between the Rule 1.5 factors and the mitigating factors typically considered in a lodestar analysis.' *Monmouth Meadows*, 416 Md. at 337, 7 A.3d at 8." *Roger E. Herst Revocable Trust*, 2011 WL 6444980, at *2 n. 5.

416 Md. at 337. The court may also "consider, in its discretion, any other factor reasonably related to a fair award of attorneys' fees." *Id*. at 340, n. 13. "The burden is on the party seeking recovery to provide the evidence necessary for the fact finder to evaluate the reasonableness of the fees." *Roger E. Herst Revocable Trust*, 2011 WL 6444980, at *2 (internal marks and citation omitted).

Plaintiffs seek a fee award of $251,493.50 "as a result of a failure by Ledo Restaurant and the Marcoses to perform covenants and agreements contained in the Trademark Agreement." (ECF No. 143, at 2).[6] In support of their motion, they attach, *inter alia*, voluminous time records, purportedly broken down by hour and task,[7] and the declaration of attorney Brent M. Ahalt. Collectively, these documents reflect that from November 10, 2006, to February 23, 2011, five attorneys and three assistants billed a total 1,132.40 hours in this case. The vast majority of time, 952.1 hours, was billed by Mr. Ahalt, who had been practicing for approximately nine years when the action was commenced and billed at rates ranging from $200 to $250 per hour

---

[6] While they also seek to recover costs associated with the litigation, that issue was resolved on July 25, 2011, when the clerk entered an order taxing costs in the amount of $6,953.91. (ECF No. 149).

[7] Although the chart tracks to some extent the suggested litigation phase organization, the entries do not permit calculation, for example, of the precise number of hours devoted to the TRO and preliminary injunction.

over the course of the litigation. Mr. Ahalt was one of two attorneys who represented Plaintiffs at trial and their sole representative on appeal. His co-counsel at trial was John P. Lynch, a veteran attorney with over twenty years of experience. Mr. Lynch billed a total of 76.4 hours at rates ranging from $270 to $325 per hour. The remaining 103.9 hours was billed by three associates, one law clerk, and two legal assistants at rates ranging from $65 to $185 per hour.

In opposing Plaintiffs' motion, Defendants argue, first and foremost, that the "incredibly minimal success" obtained by Plaintiffs "warrants only the most minimal of fees, if any at all." (ECF No. 144, at 8). Indeed, Defendants characterize the entire law suit, and particularly the appeal, as "unnecessary." (*Id*. at 4). They further contend that Plaintiffs should not be compensated for any hours associated with (1) "motions the Plaintiffs lost and positions the Court rejected" (*id*. at 15); (2) contact with Plaintiff Garth E. Beall; and (3) the attendance of both Mr. Ahalt and Mr. Lynch at trial and at pre-trial and settlement conferences. In their reply papers, Plaintiffs appear to concede that a modest reduction based on the degree of success they obtained may be appropriate. They take issue, however, with Defendants' assessment of the extent to which they were successful and the extent to which the litigation and appeal was necessary.

15

In the court's view, the first, third, and fourth factors set forth under Rule 1.5 are particularly important in making a determination of the appropriate fee award in this case. In considering the "time and labor required," pursuant to MRPC 1.5(a)(1), the court agrees with Defendants that some time involved unnecessary litigation within the case. Particularly, Plaintiffs' motion for temporary restraining order, their motion for entry of default, their intransigence on certain discovery issues, which necessitated a motion to compel, and their filing of a motion for reconsideration related to that ruling cannot be fairly characterized as "required" time and labor. The time records, however, do not permit precise calculation of these hours. In addition, some hours spent by Mr. Ahalt in contact with Garth Beall should not be compensable. Mr. Beall is a plaintiff in the case; a shareholder, director, and officer of Ledo System; and a principal in the law firm representing Plaintiffs. The court previously granted Defendants' motion to compel him to respond to deposition questions that he refused to answer on the ground of attorney-client privilege. (ECF No. 53, at 9-10). The parties appear to agree that Plaintiffs subsequently excluded from their billing records all hours directly billed by Mr. Beall, but the records are still riddled with entries by Mr. Ahalt related to contact with him and his role in the litigation extended well beyond that of a typical

16

client. The court does not agree, however, that the attendance of both Mr. Ahalt and Mr. Lynch at trial and at conferences was unnecessary. While Mr. Ahalt was clearly the primary attorney in the case, the billing records reflect that Mr. Lynch's involvement was largely limited to time spent preparing for trial; thus, it would make little sense to disallow the time he spent attending the trial or conferences associated with resolution of the litigation. Finally, the court cannot conclude on the instant record that the litigation or appeal was wholly "unnecessary," as Defendants suggest. While it may be true that the expense and scope of the litigation exceeded that which might have been necessary, it is equally true that certain of the parties' respective rights under the agreements were clarified as a result.

Regarding the third factor under MRPC 1.5(a)(3), "the fee customarily charged in the locality for similar legal services," courts in this district typically look to the "Rules and Guidelines for Determining Attorneys' Fees in Certain Cases," found in Appendix B to the court's local rules, to determine the reasonableness of hourly rates. Mr. Ahalt's declaration sets forth the experience of the attorneys and assistants who worked on the case, as well as their hourly rates (ECF No. 143-2), and these rates fall within, if not below, presumptively reasonable ranges in this district for legal professionals with comparable

experience. *See* Local Rules, App'x B n. 3 (D.Md. 2011). The court concludes that the hourly rates charged by Plaintiffs' counsel were reasonable, and Defendants do not argue otherwise.

The fourth factor, "the amount involved and the results obtained," MRPC 1.5(a)(4), is clearly at the heart of the instant motion. In their reply papers, Plaintiffs' assert that "[t]he only possible analysis to reduce the award of fees in this matter is the number of counts on which the Plaintiffs obtained success." (ECF No. 146, at 7). As to this much, the court agrees. It does not agree, however, with Plaintiffs' claim that they "were successful on 4 of 7 . . . [or] 5 of 7 counts." (*Id.*). Neither is the court persuaded by the table set forth by Defendants in their opposition papers, purporting to show the limitations of Plaintiffs' success. (ECF No. 144, at 2-3). Instead, the court looks to the second amended complaint, the original judgment, and its decision on remand to determine the degree of Plaintiffs' success.

In the first count of their second amended complaint, Plaintiffs alleged no fewer than fifteen, and likely more, specific breaches of the agreements by the Ledo Restaurant, T.J. Elliott's, Thomas Marcos, Sr., Tommy Marcos, and Jimmy Marcos. (ECF No. 46 ¶ 23). Considering the court's initial ruling and its findings on remand, Plaintiffs prevailed on roughly half of these claims against three of the defendants – *i.e.*, the Ledo

Restaurant and/or the Marcos brothers – and failed to prove that any measurable damages resulted.  The court declined to award declaratory relief, requested in the second count, beyond the extent to which the parties' rights were clarified by virtue of its decision on the breach of contract claims.  As to all the remaining trademark infringement, trademark dilution, and unfair competition counts set forth in counts three through seven, Defendants prevailed.

In their respective motion papers, both parties point to *Nelson v. Cowles Ford, Inc.*, 77 Fed.Appx. 637 (4th Cir. 2003), as authority for adjusting the fee award based on a percentage of claims upon which the moving party succeeded.  In that case, the plaintiff prevailed on one breach of contract claim, was awarded damages of $21,514.00, and was entitled to an award of attorneys' fees based on a contractual fee-shifting provision.  The court affirmed the district court's reduction of the requested fee award by two-thirds "to account for [the plaintiff's] lack of success" where he prevailed on only one of seven counts.  *Id*. at 644.  Here, Plaintiffs have prevailed on less than one-seventh of the total number of counts in their second amended complaint; moreover, they have been awarded only nominal damages as a result of their failure to prove measurable damages.  Still, they obtained a modicum of success to the

extent that they clarified the parties' rights under the prior agreements and remedied minor breaches.

Considering all the factors under MRPC 1.5(a), and particularly those discussed in detail herein, the court finds that an award of $25,000 in attorneys' fees is appropriate.

## IV.  Conclusion

For the foregoing reasons, Plaintiffs will be awarded an additional five dollars in nominal damages and attorneys' fees in the amount of twenty-five thousand dollars.  A separate order will follow.

                                     _____/s/_____
                                     DEBORAH K. CHASANOW
                                     United States District Judge